## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.                                                              Case No.  4:21-mj-09-MAF

DANIEL ALAN BAKER,

     Defendant.

_____/

## ORDER OF DETENTION PENDING TRIAL

On January 21, 2021, this court conducted a detention hearing pursuant to the Bail Reform Act of 1984, as amended, 18 U.S.C. § 3141, *et seq.* Based upon the information contained in the Pretrial Services Report, the evidence presented at the hearing, and the arguments of counsel, this court finds that the Defendant must be detained pending trial because no condition or combination of conditions reasonably would assure the safety of the community.

## Part I—Eligibility for Detention

The "Government has a substantial interest in ensuring that persons accused of crimes are available for trials." *Maryland v. King*, 569 U.S. 435, 452-53, 133 S. Ct. 1958, 1972-73 (2013) (quoting *Bell v. Wolfish*, 441 U.S. 520, 534, 99 S. Ct. 1861, 1871 (1979)). To safeguard victims, witnesses, and the community, and to ensure

that defendants are present at their trials, defendants "legitimately may be incarcerated by the Government prior to a determination of their guilt or innocence . . . ." *Bell*, 441 U.S. at 523, 99 S. Ct. at 1865-66.  To detain a defendant prior to trial, however, "the Government must comply with constitutional requirements and any applicable statutory provisions." *Id.* at 534 n.15, 99 S. Ct. at 1871 n.15 (citation omitted). In this case, under the Bail Reform Act as amended, the Defendant is eligible for detention.

## Part II—Standard

"The Bail Reform Act of 1984 provides a federal court with two choices when dealing with a criminal defendant who has been 'charged with an offense' and is awaiting trial . . . ." *Reno v. Koray*, 515 U.S. 50, 57, 115 S. Ct. 2021, 2025 (1995). A court may either release a defendant on appropriate conditions or detain the defendant. *Id.* In determining whether detention is appropriate, courts must keep in mind that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 2105 (1987). The policy of the Bail Reform Act of 1984 "is to permit release under the least restrictive condition compatible with assuring the future appearance of the defendant" and the safety of the community. *United States v. Price*, 773 F.2d 1526, 1528 (11th Cir. 1985) (per curiam).

"A criminal defendant must be released before trial on personal recognizance or upon execution of an unsecured bond, unless the court determines that release will not reasonably ensure his appearance or will endanger the safety of others." *Taylor v. Pekerol*, 760 F. App'x 647, 653 (11th Cir. 2019) (citing 18 U.S.C. 3142(b)). On the other hand, a defendant must be detained pending trial if he presents a serious risk of flight or poses a danger to another person or members of the community. *Salerno*, 481 U.S. at 749, 107 S. Ct. at 2102; *see United States v. Montalvo-Murillo*, 495 U.S. 711, 717, 110 S. Ct. 2072, 2077 (1990) (noting that the Bail Reform Act "directs a judicial officer to detain a person charged, pending trial, if the Government has made the necessary showing of dangerousness or risk of flight"). Before detaining a defendant pending trial, however, the Government must establish by a preponderance of the evidence that a defendant poses a serious risk of flight or show by clear and convincing evidence that he is a danger to another person or the community. *See Salerno*, 481 U.S. at 750, 107 S. Ct. at 2103; *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990); *United States v. King*, 849 F.2d 485, 488-89 (11th Cir. 1988); *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985).

It is important to note that the term "danger to the community" was "not meant to refer only to the risk of physical violence." *United States v. Tortora*, 922 F.2d

880, 884 (1st Cir. 1990). Safety of the community under § 3142(e) is not limited to the danger of physical violence, but "refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989); *United States v. Abdullahu*, 488 F. Supp. 2d 433, 438-39 (D. N.J. 2007) (noting that "danger to the community does not only include physical harm or violent behavior"); *United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007) (noting that "violence is not the only danger to the community this court must consider").

Clear and convincing evidence of dangerousness exists when the evidence induces "an abiding conviction that the truth of its factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S. Ct. 2433, 2437-38 (1984). "Clear and convincing evidence" entails more than a preponderance of the evidence, but less than evidence establishing a fact beyond a reasonable doubt. *Addington v. Texas*, 441 U.S. 418, 423-25, 99 S. Ct. 1804, 1808-09 (1979). Accordingly, to show by clear and convincing evidence that a defendant poses a danger to the community, the United States need not prove that there is a 100% chance that the defendant will commit harmful acts. Rather, the concept of danger entails probability of harm and, thus, demonstrating a substantial risk of harm is sufficient. *United States v. Shea*, 749 F. Supp. 1162, 1167 (D. Mass. 1990) ("The

term 'danger' invokes a concept of probability (commonly referred to as risk of harm) rather than certainty of harm.").

As discussed above, if the government satisfies its burden of demonstrating dangerousness, the Bail Reform Act requires the detention of a defendant. *Montalvo-Murillo*, 495 U.S. at 717, 110 S. Ct. at 2077 ("The Act . . . requires pretrial detention of certain persons charged with federal crimes and directs a judicial officer to detain a person charged, pending trial, if the Government has made the necessary showing of dangerousness or risk of flight."); *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996) ("The Bail Reform Act requires that a defendant be detained prior to trial if there is clear and convincing evidence that no conditions placed upon his release would reasonably assure the safety of the community."). A defendant may be detained based *either* on the risk of nonappearance *or* his dangerousness; the government is not required to establish both. *King*, 849 F.2d at 488-89; *accord United States v. Dillon*, 938 F.2d 1412, 1417 (1st Cir. 1991) ("Because we conclude that detention is required on risk of flight grounds, we need not address the issue whether appellant also presents a danger to the community.").

In determining whether there are conditions of release that reasonably might assure the appearance of the Defendant at trial and the safety of the community, courts must consider:

Page 5 of 17

(1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves . . . a controlled substance" or a firearm;

(2) "the weight of the evidence against the person";

(3) "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and

(4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

### **Part III—Findings of Fact and Statement of Reasons for Detention**

The following factors support the presumption and this court's finding that no condition or combination of conditions would reasonably assure Defendant's appearance at trial and the safety of the community:

A.   <u>NATURE AND CIRCUMSTANCES OF THE OFFENSE CHARGED</u>

The government has charged the defendant with Interstate Communication of a Threat, in violation of 18 U.S.C. § 875(c). According to the government, on January 12, 2021, the Defendant created an "event" on Facebook titled "Defend Tallahassee." In the details section, the Defendant wrote:

> Armed racist mobs have planted the Confederate flag in the nations Capitol while announcing their plans to storm every American state Capitol on or around Inauguration day. We will fight back. We will circle the state Capitol and let them fight the cops and take the building. Then we will encircle them and trap them inside. We will drive them out of Tallahassee with every caliber available. . . . We must encircle them so they cannot escape down Apalachee Parkway. Militant friends will . . . coral the trump terrorists into the Capitol building. The enemy will have high power rifles and explosives.

(Doc. 2 at 19).

Similarly, on January 14, 2021, in a comment to an article posted on the internet—specifically on the website of a Tallahassee television station—the Defendant posted a "CALL TO ARMS JANUARY 20TH!"  At the top of the posting was an image of what appears to be a Kalashnikov-type rifle, commonly referred to as an "AK-47." The rest of the Defendant's message states:

> Armed racists have planted the confederate flag in America's Capitol as they openly declared that they WILL CONTINUE to wage an ARMED COUP at every American Capitol, including Tallahassee, on Inauguration Day.

We need ALL FLORIDA RESIDENTS to RISE UP! Here in Florida we must encircle terrorists who attack the Capitol! Let them take the capitol and fight with cops, SURROUND THEM AND TRAP THEM INSIDE!

Tally residents have answered the call to arms, including combat veterans. Join us! Help protect your community from terrorists. We WILL protect capitol RESIDENTS and CIVILIANS from armed racist mobs WITH EVERY CALIBER AVAILABLE.

This is an armed COUP and can only be stopped by an armed community!

If you're afraid to die fighting the enemy, stay in bed and live.

(Doc. 2 at 22).

This court has already determined that these messages contain true threats that are not protected by the First Amendment. This court determined that the Defendant intended these messages to serve as threats or knew that a reasonable person could perceive them to be threats. There is a substantial risk that the Defendant would seek to engage in violent acts such as those he threatened, thereby endangering members of the community. Thus, the fact that the Defendant made threats of violence—and was attempting to recruit others to commit acts of violence—indicates that he poses a danger to the community.

In the threat made on January 12, the Defendant also indicated that he was working with "militant friends" and he also previously noted his ties to "Antifa."

The threat of concerted criminal activity poses a greater danger to society and a greater risk that the Defendant receives help in fleeing before he is tried. *See United States v. Feola*, 420 U.S. 671, 693-94, 95 S. Ct. 1255, 1268 (1975) (noting the dangers of "concerted criminal activity"); *Krulewitch v. United States*, 336 U.S. 440, 448-49, 69 S. Ct. 716, 721 (1949) (Jackson, J., concurring) ("[T]he strength, opportunities and resources of many is obviously more dangerous and more difficult to police than the efforts of a lone wrongdoer.").

Accordingly, the nature and circumstances of the charged offenses indicates that no condition or combination of conditions can reasonably assure the Defendant's appearance at trial or the safety of the community.

### B.   THE WEIGHT OF THE EVIDENCE AGAINST THE DEFENDANT

This court must also consider the weight of the evidence against the Defendant. "This factor goes to the weight of the evidence of dangerousness" or risk of flight, "not the weight of the evidence of the defendant's guilt," although these concepts often will be related. *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010); *see United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010) (noting that when "the evidence of guilt is strong, it provides" a defendant "with an incentive to flee").

The weight of the evidence against the Defendant is substantial. Although certainly the Defendant had no burden of proof at the detention/preliminary hearing, even one of the Defendant's witnesses, his roommate, seemed to concede that the Defendant was the author of the threatening messages. Furthermore, the evidence showed that a paper copy of one of the threatening messages was seen in the Defendant's residence when he was arrested. The weight of the evidence, therefore, is substantial.

Because the weight of the evidence strongly suggests that the Defendant was the author of the violent threats, the weight of the evidence affirms that the Defendant poses a danger to other persons and the community. The weight of the evidence also suggests that the Defendant poses a risk of flight because a defendant facing a trial in which substantial evidence will be presented has a greater incentive to flee than a defendant facing a weaker case. *See United States v. Al-Arian*, 280 F. Supp. 2d 1345, 1358 (M.D. Fla. 2003) (noting that a defendant has incentive to flee commensurate with the strength of the prosecution's case, especially if he is facing a substantial sentence).

## C.   THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Aspects of the Defendant's history and his various characteristics also suggest that he poses a risk of flight and a danger to other persons and the community.

1.      *Participation in Violent Acts in the Middle East*

Among other things, the evidence showed that in 2017, the Defendant travelled to Iraq and Syria to join the "People's Protection Units" (also known as the "YPG") in fighting forces of the so called "Islamic State of Iraq and the Levant" and the Republic of Turkey. The YPG is affiliated with the Kurdistan Worker's Party, which is a Marxist terrorist organization. The Defendant remained in the Middle East from approximately 2017 to April 2019. He was filmed fighting, admitted training others in military tactics, and told people that he was trained as a sniper. A reasonable person could conclude from this that the Defendant had the training and inclination to carry out his threats, that he previously engaged in acts of violence, and that he is prepared to kill people. Prior acts of violence suggest a propensity for violence or at least indicate that a defendant will employ violence when he believes it is necessary.

A "prior record of violence eases the government's burden of showing dangerousness." *United States v. Rodriguez*, 950 F.2d 85, 89 (2d Cir. 1991). A court "may infer a present danger to the community" from a defendant's prior commission of violent acts. *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985) (Kennedy, J.). Defendant's multiple violent offenses only strengthen this inference.

Page 11 of 17

2. *Access to Firearms and Efforts to Obtain More Firearms*

The evidence also showed that the Defendant owned two firearms (which were loaded with ammunition), recently purchased a .22 caliber rifle which he had not yet retrieved from a pawn shop, and was seeking to obtain multiple additional firearms, including an AK-47. Because firearms make those who possess them more lethal, possession of and access to firearms make defendants more dangerous. *See United States v. Abboud*, 42 F. App'x 784, 784 (6th Cir. 2002) (while affirming the district court's pretrial detention order, noting that firearms were recovered in a search of the defendant's home and business and one was loaded with ammunition); *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985) (holding that the defendant posed a threat to the community, warranting pretrial detention, in part because agents found firearms at his home). The Defendant's penchant for violence, his proficiency with firearms, his efforts to obtain firearms, and his statement that he has "militant friends" who might very well help him obtain firearms, make him particularly dangerous to the community. "[C]riminals with an affinity for guns and violence are the least likely to change their ways." *Ovalles v. United States*, 905 F.3d 1231, 1255 (11th Cir. 2018) (W. Pryor, J., concurring). This factor, therefore, also demonstrates that no condition or combination of conditions could assure the safety of others.

### 3.   *Defendant's Lack of Substantial Work History*

The evidence also indicates that the Defendant currently is unemployed and worked in 2020 only for a "few weeks." He, thus, has no job or occupation tying him to Tallahassee.

### 4.   *Lack of Substantial Ties to Tallahassee*

It is also relevant that the Defendant lacks substantial ties to Tallahassee. As noted above, he has no job in Tallahassee. He also has no children, siblings, or spouse tying him to Tallahassee. As for relatives, the Defendant indicated that only his stepmother lives in Tallahassee and possibly an adopted brother with whom the Defendant is not close. The Defendant also does not own a home in Tallahassee and had resided at his apartment for only a few months. Prior to that, he resided in a tent in Leon County, Florida. And prior to that, he lived in a tent in other parts of the United States. The lack of ties to Tallahassee increase the risk that Defendant will flee rather than be tried.

### 5.   *Foreign Contacts and Travel to Foreign Countries*

As noted above, the Defendant also has ties to Syria and contacts in a militant arm of the Kurdistan Worker's Party. The Defendant resided with this group from 2017 to 2019, and there is nothing stopping the Defendant from returning to them and thereby evading prosecution in the United States. This fact strongly militates in

favor of detaining the Defendant. *See United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990) (noting that the defendant was detained as a flight risk because of substantial foreign contacts).

The Defendant argued that he lacks the funds to make such a trip, but he has demonstrated resourcefulness and the ability to raise capital without working, such as fundraising on the internet. Indeed, the Defendant stated in a Facebook post that he was "willing to do ANYTHING to ANYONE"—including "robbing the rich and pedophiles too"—in order to raise the capital he needed to attend a community college. Someone who expresses a willingness "to do ANYTHING to ANYONE" merely to attend a college probably also is willing to do anything to anyone— including robbing the rich and pedophiles—to avoid prosecution. This, too, strongly suggests that the Defendant poses a substantial risk of flight.

**6.      *Travel to and Ties to Other Locations in the United States***

The evidence also shows that in 2020, the Defendant travelled to various parts of the United States—including Nashville, Tennessee and Seattle, Washington—to participate in protests. The Defendant was able to travel without having the benefit of a job or any known means of support, which further suggests that he has access to sources of capital. Once in Seattle, the Defendant resided in an area taken over by protestors and from which the protestors excluded the police. The Defendant's

roommate testified that the Defendant and he had contemplated and discussed traveling to other locations. If this court were to release the Defendant, there would be nothing to prevent him from returning to one of these cities, or some other location in the United States, in order to evade prosecution.

### 7.   *Repeated Public Endorsement of Violence and Violent Acts*

As articulated in the affidavit in support of the criminal complaint and arrest warrant, and as partially outlined in this court's order regarding probable cause, the Defendant repeatedly has expressed an interest in violence and repeatedly endorsed violent means to advance the political beliefs that he espouses. For example, he endorsed stabbing, the manufacture and use of bombs, violent revolution, taking up arms against then President Trump, "death to amerikka," "slaying" his enemies, the murder of Turkish aviators, and the murder of U.S. military officers. This indicates that the Defendant likely would endorse and use violence to avoid re-arrest and prevent his trial and possible conviction.

### 8.   *The Defendant's Alias*

Also relevant is the fact that the Defendant has an alias, "Ali Sharem Ourecox." Courts have noted that the existence or use of an alias also is a factor in favor of detaining a defendant because an alias can assist a defendant in fleeing, traveling, and evading re-arrest. *United States v. Gonzales Claudio*, 806 F.2d 334,

339 (2d Cir. 1986); *Abdullahu*, 488 F. Supp. 2d at 439; *United States v. Giordano*, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005).

## D.   THE NATURE AND SERIOUSNESS OF THE DANGER POSED BY RELEASE

As the discussion above indicates, release of the Defendant poses a serious risk of danger to the community, including a risk of violence.

Based on this short summary of some of the evidence adduced at the detention hearing and contained in the Pretrial Services Report,[1] and having considered the statutory factors and the findings of fact above, this court finds that no condition or combination of conditions will reasonably assure the Defendant's appearance as required or the safety of the community or another person. Accordingly, Defendant shall be detained pending trial.

### Part IV—Directions Regarding Detention

The Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in

---

[1] Because this court is ordering Defendant's detention, its findings and analysis focused on the factors that warrant detention. Some factors weighed in favor of releasing the Defendant—for example, the fact that the Defendant resided in the Northern District of Florida when he was arrested, and the fact that the Defendant has a promise of employment if he were released. This court considered these factors and other factors not specifically discussed in this order.

Page 16 of 17

custody pending appeal. The Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with any federal court proceeding.

      **SO ORDERED**, at Panama City, Florida, this <u>25th</u> day of January, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**